```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
DAWN EUGENIA RELLA,

               Plaintiff,                    MEMORANDUM & ORDER
                                             21-CV-4170 (JS)
     -against-

COMMISSIONER OF SOCIAL SECURITY,[1]

               Defendant.
---------------------------------X
APPEARANCES
For Plaintiff:      Caeden W. Sehested, Esq.[2]
                    Goldsmith & Tortora
                    2067 Jericho Turnpike
                    Commack, New York  11725

For Defendant:      Troy Pratten, Esq., and
                    Hugh Dun Rappaport, Esq.
                    Special Assistant U.S. Attorneys
                    Office of General Counsel
                    6401 Security Boulevard
                    Baltimore, Maryland  21235
```

---

[1]  In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, the Clerk of Court is directed to amend the caption in this action, generically identifying the Defendant as "Commissioner of Social Security".

[2]  While the Case Docket indicates Attorney Sehested is with the Olinsky Law Group, the Civil Cover Sheet states he is with Goldsmith & Tortora. (Compare Case Docket, with Civil Cover Sheet, ECF No. 2.) Similarly, in his papers, Attorney Sehested identifies Goldsmith & Tortora as the firm with which he practices. (See, e.g., Support Memo, ECF No. 11, title page; Reply, ECF No. 16, at 7.) Accordingly, the Court lists Attorney Sehested's firm as Goldsmith & Tortora.

SEYBERT, District Judge:

Plaintiff Dawn Eugenia Rella ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the denial of her application for Social Security Disability Insurance Benefits by the Commissioner of Social Security (the "Commissioner"[3]).  (See Compl., ECF No. 1, ¶ 1.)  Pending before the Court are Plaintiff's Motion for Judgment on the Pleadings (the "Motion"), and the Commissioner's Motion to Remand (the "Remand Motion").  (See Motion, ECF No. 11-1; see also Support Memo, ECF No. 11; Remand Motion, ECF No. 15; Remand-Support Memo, ECF No. 15-1; Reply, ECF No. 16.)  For the following reasons, Plaintiff's Motion is GRANTED, and the Commissioner's Remand Motion is GRANTED in part and DENIED in part.

## BACKGROUND[4]

I.   Procedural History

On September 20, 2018, Plaintiff filed for disability insurance benefits alleging disability as of September 20, 2014, due to depression, anxiety, posttraumatic stress disorder

---

[3]  Herein, the Court may refer to the Social Security Administration as the "Agency".

[4]  The background is derived from the Administrative Transcript filed by the Commissioner on October 27, 2021.  (See ECF No. 9.)  For purposes of this Memorandum & Order, familiarity with the administrative record is presumed.  Hereafter, the Administrative Transcript will be denoted by the Court as "R".

("PTSD"), panic attacks, confusion, and vertigo. (R. 276, 294.) After Plaintiff's claim was denied, she requested a hearing before an Administrative Law Judge ("ALJ"), which was conducted on July 27, 2020 (hereafter, the "Disability Hearing"). (R. 141.) Plaintiff was accompanied by counsel, and vocational expert ("VE") Marian Marracco testified at the Disability Hearing. (See id.)

In a September 30, 2020 decision, the ALJ found Plaintiff was not disabled (hereafter, the "ALJ Decision"). (R. 15-31.) On February 27, 2018, the Agency's Appeals Council denied Plaintiff's request for review; therefore, the ALJ Decision became the final decision of the Commissioner. (R. 1-4.)

II. The Instant Action

On July 26, 2021, Plaintiff initiated the instant action. (See Compl.) Thereafter, on January 4, 2022, Plaintiff moved for judgment on the pleadings, requesting a directed finding of disability and the matter be remanded to the Commissioner for the calculation of benefits. (See Support Memo at 1.) Primarily, Plaintiff argues the ALJ erred by not properly considering the opinion of Plaintiff's mental health provider, Licensed Master Social Worker Susan Leach ("Leach"). (See id. at 11-15.) Plaintiff also puts forth the argument that the ALJ's finding Plaintiff was not disabled contradicts both the ALJ's mental Residual Functional Capacity ("RFC") determination and the VE's testimony regarding Plaintiff's being only occasionally able to

3

tolerate social interactions with coworkers, supervisors, and members of the general public, and only occasionally being able to tolerate changes in the workplace. (See id. at 15-18.)

In response, the Commissioner moved for remand pursuant to Rule 12(c). The Commissioner concedes remand is required because: (1) "the ALJ did not properly evaluate the persuasiveness of the medical opinions of" Leach and a nurse practitioner, Rebecca Slone; and (2) "the ALJ presented the [VE] with a hypothetical question that did not contain all the limitations she ultimately included in the RFC." (Remand-Support Memo at 9; see also id. at 14 (conceding "the ALJ committed reversible error").) However, contrary to Plaintiff, the Commissioner asserts further administrative proceedings are necessary upon remand, contending "[t]he record contains conflicting medical evidence that could plausibly command a legally sufficient denial of benefits, and the discretion to resolve those conflicts lies solely with the Commissioner." (Id. at 10; see also id. at 14 ("Far from supporting reversal for calculations of benefits, the ALS's error at step five for the sequential evaluation process requires remand for additional administrative proceedings.").)

In reply, Plaintiff maintains remand for calculation of benefits is all that is necessary here, since this is not a case where the ALJ needs to obtain new medical evidence to fill an evidentiary gap. (Reply at 2 (discounting Commissioner's reliance

4

on Blowe v. Comm'r of Soc. Sec., No. 19-CV-2658, 2020 WL 3129062 (E.D.N.Y. June 12, 2020)), as distinguishable from present case.) Indeed, the ALJ's own finding in this case is that "Plaintiff cannot interact normally with others on a sustained basis in the work setting" which "constitutes both an extreme limitation in an area of mental functioning and a substantial loss of ability to meet one of the basic mental activities required for all unskilled work." (Id. at 2.) Hence, even without crediting the opinion evidence of Leach and/or Slone, "the ALJ already found that the record evinces Plaintiff's inability to interact with others on a sustained basis", thereby precluding employment. (Id. at 3.) Therefore, given "the ALJ's own admission, the record demonstrates . . . Plaintiff lacks capacity to perform at least one of the most basic mental requirements for all work, an extreme limitation by definition," making it unnecessary "to reevaluate the medical opinions or seek further vocational testimony to ascertain that Plaintiff is disabled." (Id. at 6 (citing Demars v. Comm'r of Soc. Sec., 841 F. App'x 258 (2d Cir. Jan. 6, 2021) (holding remand for calculation of benefits warranted where substantial evidence (1) did not support ALJ's finding that claimant was not disabled, but (2) did support finding claimant's condition met severity of listed impairment)).)

III. <u>The Subject ALJ Decision</u>

"Here, the parties agree that remand is warranted but disagree as to whether benefits may now be awarded. The Court's inquiry will therefore focus on the latter." <u>Peteroy v. Comm'r of Soc. Sec.</u>, No. 21-CV-3370, 2022 WL 16699473, at *1 (E.D.N.Y. Nov. 3, 2022); <u>see also</u> <u>Blowe</u>, 2020 WL 3129062, at *4 (focusing, where "[t]he parties agree that remand is warranted," on whether the action should be remanded for calculation of benefits only or for further administrative proceedings).

Having isolated the discrete issue upon appeal and because there is no dispute as to the contents of the ALJ Decision, but, instead the dispute is focused upon how to interpret the ALJ's determination of Plaintiff's RFC, for the reader's convenience, the Court provides the Plaintiff's summarily of said Decision.[5] (<u>See also</u> supra note 4.)

> In her decision, the ALJ found that Plaintiff met the insured status requirements for Title II benefits through June 30, 2017, and had not engaged in substantial gainful activity since the alleged onset date. AR 17. She found that Plaintiff suffered from the severe impairments of osteoarthritis in the right knee, arthrosis in the right shoulder, minimal joint space narrowing in the right

---

[5] "While it is undisputed Plaintiff has physical impairments in addition to mental ones, since Plaintiff's action here focuses upon h[er] mental impairments, the Court does likewise. Accordingly, no discussions of Plaintiff's physical impairments . . . are addressed herein." <u>Armstead v. Comm'r of Soc. Sec.</u>, No. 20-CV-2841, 2024 WL 5077582, at *3 n.3 (E.D.N.Y. Dec. 11, 2024) (collecting cases).

6

> hip, degenerative changes in the lumbar spine, degenerative changes in the right ankle, <u>anxiety disorder, PTSD, and major depressive disorder</u>, none of which were determined to meet or equal the severity of a listed impairment contained in 20 CFR Part 404, Subpart P, Appendix 1. AR 18. The ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform medium work, except that:
>> this individual is limited to a job that does not require sudden exertion. This individual is limited to no climbing of stairs, no climbing ladders and cannot climb ladders [sic], ropes and scaffolding. This individual is limited to no exposure to unprotected heights, no dangerous moving machinery and no motor vehicle operation. <u>This individual can only occasionally tolerate social interaction with coworkers, supervisors and members of the general public. This individual is limited to a simple job, in that she can only occasionally tolerate changes in the workplace</u>.
>
> AR 21. Based on that RFC, the ALJ found that Plaintiff could not perform her past relevant work, but could perform other work in the national economy. AR 30. Thus, she concluded that Plaintiff was not disabled. AR 30-31.

(Support Memo at 2; <u>see also</u> Remand-Support Memo at 8-9 (similarly summarizing ALJ Decision).) More specifically, in reaching her RFC determination, which the ALJ states was "[b]ased on the record" and "evidence as a whole", regarding Plaintiff's mental impairments, the ALJ:

> acknowledge[d] that the claimant does have some residual anxiety and depressive symptoms from her mental disorders. Therefore, the

7

>    undersigned has accommodated the claimant's stress limitations caused by these symptoms by limiting her to simple job, in that she could only occasionally tolerate changes in the workplace. This limitation was given because of the increased likelihood of the claimant's negative intrusive thoughts manifesting themselves if the claimant had to perform complex task that changes frequently on a sustained basis in an eight-hour workday. <u>The record also supports that the claimant's mental impairments limits her to have occasional contact with the public, coworkers and supervisors. Due to the unpredictable nature of other people and the claimant's diagnosed disorders, negative intrusive thoughts would also likely occur if the claimant had to interact normally with others on a sustained basis in the work setting.</u>

(ALJ Decision at 28-29 (emphasis added).)

## DISCUSSION

I.  <u>Standard of Review</u>

In reviewing a final decision of the Commissioner, a district court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." <u>Rucker v. Kijakazi</u>, 48 F.4th 86, 90-91 (2d Cir. 2022) (quoting <u>Estrella v. Berryhill</u>, 925 F.3d 90, 95 (2d Cir. 2019)). District courts will overturn an ALJ's decision only if the ALJ applied an incorrect legal standard, or if the ALJ's ruling was not supported by substantial evidence. <u>See</u> <u>id.</u> (citing <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012)). "[S]ubstantial evidence . . . means

8

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Further,

> "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "'there are gaps in the administrative record or the ALJ has applied an improper legal standard'" and where "further findings or explanation will clarify the rationale for the ALJ's decision." Coleson v. Comm'r of Soc. Sec., No. 18-CV-02862, 2020 WL 1989280, at *3 (E.D.N.Y. Apr. 26, 2020) (quoting Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999)). Where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose, the court may reverse and remand solely for the calculation and payment of benefits." Id. (internal quotation marks and citations omitted).

Blowe, 2020 WL 3129062, at *4 (E.D.N.Y., 2020).

II. The Instant Case

    A. Plaintiff's Relevant Mental Health Record

The record evidence establishes that, on April 15, 2016, Plaintiff underwent a psychiatric evaluation performed by Dr. Barbara Ponieman, who reviewed Plaintiff's prior medical records and obtained a history from Plaintiff. (See R. 784-86.) During the evaluation, Plaintiff complained of anxiety and anger, and

9

reported a history of Bipolar Affective Disorder. (See id. at R. 784.) Her symptoms included: depressed mood; decreased concentration; excessive worrying; euphoria; high irritability; talkativeness; and, feelings of grandeur. (See id. at R. 786.) Throughout the evaluation, the Doctor observed Plaintiff to be: hypomanic; talkative; and alternating between laughing and crying. (See id. at R. 784.) Mental status examination was notable for rapid and pressured speech, rapid thought pattern, upset mood, anxious affect, and irritability. (See id. at 785.) Dr. Ponieman assessed bipolar affective disorder, referred Plaintiff to therapy, and educated her about her medications. (See id. at 786.)

Plaintiff continued treating with Dr. Ponieman into September of 2017. (See id. at R. 662-65.) During those appointments, Dr. Ponieman noted Plaintiff to present as, inter alia: anxious and demanding (see, e.g., id. at R. 664, 748, 768, 785); frustrated and irritable (see, e.g., id. at R. 748, 768, 785); being in an upset mood (see, e.g., id.); and talkative, with rapid and pressured speech (see id.).

It appears Plaintiff's therapy treatment alternated between Dr. Ponieman and Licensed Clinical Social Worker ("LCSW") Beth Lorell. On May 5, 2016, Plaintiff began therapy LCSW Lorell. (See R. 782-83.) LCSW Lorell's observations of Plaintiff were similar to those of Dr. Ponieman, i.e., during their sessions, LCWS Lorell found Plaintiff: to be tearful; to be irritable;

10

exhibited a rapid thought pattern; and presented with pressured speech. (See, e.g., R. at 667, 673, 676, 691, 694, 697, 703, 715, 727, 732.) Moreover, both these mental health providers also reported Plaintiff presenting: with a normal appearance; as not suffering with hallucinations or delusions; with no suicidal or homicidal ideations; intact recent and remote memory; and good judgment. (See, e.g., id. at R. 667, 670, 673, 761-62, 764-65, 768, 771, 774, 777, 780, 785-86.) LCWS Lorell also consistently reported Plaintiff: was depressed (see, e.g., id. at R. at R. 667, 670, 673, 676, 691, 694, 697, 715, 727, 732, 777); suffered from excessive worry (see id.); had a decreased concentrating ability (see id.); and, had only fair insight (see id.). She assessed Plaintiff as hypomanic, with periods of rage and self-hatred, as well as panic attacks. (See id. at R. 783.) Plaintiff continued regular treatment with LCSW Lorell through at least June 2017.[6] (See, e.g., id. at R. 666.)

[Proceed to next page.]

---

[6]   Plaintiff had more than a year's gap in therapy from mid-September 2017 to February 1, 2019. (See R. at 655.) She reported to LCWS that she "had a difficult year with anxiety, depression, and health problems" and that her "bouts of depression" led to her isolating at home. (Id.)

11

B. <u>The ALJ's Assessment</u>

In its Social Security Ruling ("SSR"[7]) 85-15,[8] the Agency advises, in relevant part:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) [1] to understand, carry out, and remember simple instructions; [2] to respond appropriately to supervision, coworkers, and usual work situations; <u>and</u> [3] to deal with changes in a routine work setting. A substantial loss of ability to meet <u>any</u> of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

Social Security, Disability Insurance, "SSR 85-15: Titles II and XVI: Capability to do Other Work—The Medical-Vocational Rules as

---

[7] "**SSRs** are a series of precedential standard to be used in subsequent similar cases decisions relating to the programs administered by SSA and are published under the authority of the Commissioner of Social Security." Social Security: <u>What are Social Security Rulings (SSRs)?</u>, available at <u>https://www.ssa.gov/regulations/def-ssr.htm#:~:text=Medicare-,Social%20Security%20Ruling%20Definition,Rules%20%3ESocial%20Security%20Ruling%20Definition</u> (last visited Apr. 7, 2025) (emphasis in original).

[8] Also referred to as the Agency's Program Policy Statement No. 119.

12

a Framework for Evaluating Solely Nonexertional Impairments," available at https://www.ssa.gov/OP_Home/rulings/di/02/SSR85-15-di-02.html (last visited Mar. 27, 2025) (emphasis added). Further, and as Plaintiff argues, pursuant to Agency policy guidelines, "on a sustained basis" means the "ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule". See, e.g., SSA POMS DI 25015.020 ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule. It is not the least an individual can do, but the most, based on all of the information in the case record."); (see also Reply at 3).

Plaintiff relies upon SSR 85-15 to support her position that "the ALJ's factual finding . . . Plaintiff cannot appropriately interact with others on a sustained basis renders Plaintiff disabled." (Reply at 5-6 (citing SSR 85-15; POMS DI 25020.010(A)(3)); see also id. at 3 (arguing "even without crediting the opinion evidence [of Leach and/or Sloane], the ALJ already found that the record evinces Plaintiff's inability to interact with others on a sustained basis").) The Court agrees. And, finding this position persuasive, as discussed infra, the Court further finds it unnecessary to address Plaintiff's

13

additional arguments in support of remand for calculation of benefits only.

The plain reading of SSR 85-15 instructs where a claimant has substantially lost the ability to maintain _any_ of the basic work-related activities, which includes responding appropriately to supervision, coworkers, and usual work situations, such a scenario severely limits the potential occupational base and justifies a finding of disability. That scenario is present here; the ALJ determined, due to Plaintiff's mental impairments, she "could only occasionally tolerate changes in the workplace" and "limits her to . . . occasional contact with the public, coworkers and supervisors" because having to "interact normally with others on a sustained basis in the work setting" would likely cause "negative intrusive thoughts". (ALJ Decision, R. 28-29; see also id. at 21 ("This individual can only occasionally tolerate social interaction with coworkers, supervisors and members of the general public. This individual is limited to a simple job, in that she can only occasionally tolerate changes in the workplace." (omitting bold text)).) Hence, as she argues, by virtue of the Agency's rules, Plaintiff is disabled. (See Reply at 6 (asserting "[b]y the ALJ's own admission, the record demonstrates that Plaintiff lacks capacity to perform at least one of the most basic mental requirements for all work, an extreme limitation by definition").)

14

Moreover, since the ALJ found Plaintiff lacked the ability to adequately interact, which is one of the three requisite abilities necessary to meet basic mental demands of competitive, remunerative, unskilled work, it is of no moment whether she is also unable to handle more than occasional change in the workplace. Hence, the Commissioner's contention that further administrative proceedings are necessary for the ALJ to consider "conflicting medical evidence that could plausibly support a legally sufficient denial of benefits" (Remand-Support Memo at 11), is unavailing. Indeed, as Plaintiff aptly puts it: "[T]he impact of Plaintiff's inability to handle more than occasional change in the workplace is inconsequential given her undisputed and legally disabling limitations in the area of social interaction." (Reply at 5.) Therefore, since, as the Commissioner correctly states, the ALJ's factual findings are entitled to deference and "must be upheld unless a reasonable factfinder would have to conclude otherwise" (Remand-Support Memo at 6 (internal quotations and citation omitted)), Plaintiff further maintains, "deference to the ALJ's factual finding that Plaintiff cannot appropriately interact with others on a sustained basis renders Plaintiff disabled." (Reply at 5-6 (citation omitted).)  Once more, this Court concurs.

Of relevance, the ALJ stated:

> During the period at issue, the claimant could only occasionally tolerate social interaction with coworkers, supervisors and members of the

15

> general public and the claimant was limited to a simple job, in that she can only occasionally tolerate changes in the workplace. The combined effects of the claimant's severe mental impairments are the cause of these limitations.

(ALJ Decision at 24.) The ALJ then proceeded to explain, "Prior to her alleged onset date, the record indicates [Plaintiff] was evaluated and treated for depression and anxiety symptoms." (Id.) Continuing in two subsequent, single-spaced pages, the ALJ provided a summary of Plaintiff's mental health treatment with Dr. Ponieman and LCSW Lorell, from mid-April 2016 through mid-September 2017, who both discussed Plaintiff's bipolar disorder and PTSD. (See id. at 24-26.) The Doctor's and Social Worker's records also indicated, that during this time-period, inter alia, Plaintiff went from rejecting suggestions of medication to starting (in early December 2016) and continuing medication to aid in managing her bipolar disorder. As a result, "the record support[ed] . . . [Plaintiff] had a number of . . . mental impairments from the alleged onset date through the date of last insured" and the ALJ found "the record as a whole support[ed] the . . . non-exertional limitations as set forth" in the ALJ Decision. (ALJ Decision at 27.) The ALJ reiterates this later in her decision, stating:

> The record also supports [Plaintiff's] mental impairments limits her to have occasional contact with the public, coworkers and supervisors. Due to the unpredictable nature

16

> of other people and [Plaintiff's] diagnosed disorders, negative intrusive thoughts would also likely occur if [Plaintiff] had to interact normally with others <u>on a sustained basis</u> in the work setting.

(<u>Id.</u> at 28-29 (emphases added); <u>see also</u> <u>id.</u> at 29 (stating ALJ's assessment of Plaintiff's RFC "is supported by the assessments and findings of sources as set forth herein").)  As the ALJ repeatedly stated, Plaintiff suffers a mental impairment that would impede work on a sustained basis; in other, words, notwithstanding her stated conclusion to the contrary, the ALJ found Plaintiff disabled.  And, having reviewed the administrative record, the Court finds sufficient evidence of same such that a reasonable factfinder would not have to conclude otherwise.  Again, as persuasively asserted by Plaintiff, "[R]emanding for the ALJ to reevaluate the evidence and draft a new decision will not serve to fill evidentiary gaps or provide more logical reasoning.  Rather, it would only grant the ALJ the opportunity to alter her findings in order to evade the only lawful conclusion that her current findings support: that Plaintiff is disabled." (Reply at 4 (citing <u>Andrew S. v. Saul</u>, No. 19-CV-0570, 2020 WL 6709833, at *7 (N.D.N.Y. Nov. 16, 2020)).)  Therefore, no purpose would be had by remanding this case for further administrative proceedings.[9]  <u>See, e.g.</u>,

---

[9] Unlike the <u>Blowe</u> case where, by rejecting the only medical opinion regarding claimant's physical functional capacity, the ALJ created a gap in the record, thereby necessitating further development of record, <u>see</u>, Blowe, 2020 WL 3129062, at *4, here,

17

Leonard v. Kijakazi, No. 20-CV-2832, 2022 WL 896982, at *4 (E.D.N.Y. Mar. 28, 2022) (finding, where Commissioner "had three opportunities to meet her burden of proving that [claimant] is capable of working, despite his disability," and Commissioner "admits that she has failed to meet this burden," "remand[ing] case for a calculation of benefits only"); (see also Reply at 5 (arguing Court should not grant remand "for further proceedings merely to allow the ALJ a mulligan")). Accordingly, remand for the sole purpose of calculating an award of benefits is warranted in this case. See Demars, 841 F. App'x at 263; see also Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999) (stating remand for the calculation of benefits is appropriate where the Court "ha[s] no apparent basis to conclude that a more complete record might support the Commissioner's decision")). Additionally, in this instance, "[p]reventing further delay in awarding [P]laintiff benefits is 'a factor militating against a remand for further proceedings where the record contains substantial evidence of disability.'" Leonard, 2022 WL 896982, at *2 (quoting Olejniczak v. Colvin, 180 F. Supp. 3d 224, 230 (W.D.N.Y. 2016) (further

---

as in the Demars case, there is substantial evidence in the record supporting the ALJ's finding that Plaintiff suffers an impairment precluding employment, thereby rendering her disabled. See Demars, 841 F. App'x at 263 (holding, where there was substantial evidence claimant was impaired such that he was unable to work, remand for further evidentiary proceedings not required; directing remand to Commissioner for calculation of benefits).

18

citation omitted)). Thus, there is no need to remand for further administrative proceedings.

–\*–\*–\*–

To the extent not expressly articulated herein, the Court finds unavailing the Commissioner's remaining arguments in favor of remand for further administrative proceedings. In any event, because it has determined remand for calculation of benefits only is warranted, "the Court need not and does not reach [the Commissioner's] remaining argument[s] . . . ." Kelly v. Comm'r of Soc. Sec., No. 20-CV-5318, 2024 WL 5120051, at \*13 (E.D.N.Y. Dec. 16, 2024) (quoting Rowe v. Berryhill, No. 17-CV-0208, 2018 WL 4233702, at \*5 (W.D.N.Y. Sept. 6, 2018); further citing Keli Ann D. v. Comm'r of Soc. Sec., No. 23-CV-0765, 2024 WL 3493274, at \*7 (N.D.N.Y. July 22, 2024) (same; quoting Rowe); Poceous v. Comm'r of Soc. Sec., No. 20-CV-4870, 2024 WL 3029197, at \*15 n.13 (E.D.N.Y. June 17, 2024) (declining to consider plaintiff's further arguments in support of remand upon finding procedural error by ALJ warranting remand)).

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED:** (1) Plaintiff's Motion (ECF No. 11) is GRANTED; and (2) the Commissioner's Remand Motion (ECF No. 15) is GRANTED in part and DENIED in part, such that this matter being REMANDED to the Commissioner for the calculation of benefits only; and

19

**IT IS FURTHER ORDERED**, once Judgment has entered, the Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: April 9, 2025
       Central Islip, New York